Mr. Singhal, you have one minute for a vote Yes, your honor. Thank you. May it please the court, Kyle Singhal for Appellant Brent Borland. This court should remand for resentencing because the district court erred as a matter of law in failing to apply the credit for loss, the credit for collateral to Mr. Borland's loss amount. Without talking about whether he waived the sovereign, that collateral was not immediately deliverable to any of the victims, was it? Correct. So how could they value it? By making a reasonable estimate of it, which is what the law requires. But it was in litigation. How could you make a reasonable estimate when people were suing over and there wasn't clear title to anyone? Two ways, your honor. One, the district court could have simply asked the government for its estimate and could have then looked at Mr. Borland's appraisals, looked at what the government said. Two, the district court could have had a hearing where it asked for expert testimony to value what the approximate value was of the collateral with the contingencies. If the district court correctly recognized existed, there were contingencies, but a lot of collateral is subject to contingencies. Banks get second and third mortgages all the time. It doesn't make the house not collateral. It just reduces, potentially, the value of the collateral. But here there was, there was, the circumstances surrounding a lot of this collateral was, it seems to me, and correct me if I'm wrong, were substantially more complicated than you're suggesting. And there are multiple claims to some of this. There are false pledges of some of this property. And the district court decided that it was just, probably wasn't, didn't meet a definition of collateral at all. Right. And we think that decision that it didn't meet the definition of collateral was incorrect as a matter of law. Again, the contingencies, which there were, could reasonably have affected the value of it. Maybe it wasn't worth $32 million. Maybe it was a percentage of that. But other facts, for example, Appendix 281, the government says that 30% of the $25 million, approximately, that Mr. Borland acquired was diverted. Well, that means $17.5 million of investment money went into the property. There was something there. And to find that it was worth so little as to reduce the loss amount by zero seems to be inconsistent with the record. We skipped over waiver, but I'll take you back. Sure. Which is, yeah, I mean the district court looked at this and said, I don't see it on this record, but there's something to the argument, and were you trial counsel? I was not. Gave trial counsel an opportunity to come back, either on other properties or more information here. And then a stipulation is entered into, which is contradictory to the, I think, inconsistent with the argument that was being made as to the value of the collateral being subtracted out. So you've got the stipulation, you've got no relevant objection to the PSR, you've got the restitution order, all of which are inconsistent with, and it seems, based on a tactical decision, that it would benefit the defendant, and it did. Why isn't that true waiver? So I'd like to answer that in three parts, if I may. First, to clarify the record on the stipulation, that's Appendix 280, is the joint letter that was submitted by the parties. Also what was submitted in the record, Appendix 283-284, is a sentencing letter by trial counsel, which clarified on 284, under procedural history, that the court ruled on the application of issue, said it didn't apply, and that the parties, quote, subsequently engaged in negotiations to resolve the outstanding objections. That is, once the district court ruled on the collateral issue and said it doesn't apply, then they resolved what was left. Of course there was no objection to the gross loss amount. That's what, and this goes to the tactical point, that's what was negotiated, was the defendant agreed not to challenge the gross loss amount being 21.9 if the Canadian prior conduct wasn't used. But none of that was objectively or intended to waive the already decided issue that, as the application. The one that she clearly invited counsel to return on. If the record changed. She said, based on the record before me, there's too many contingencies. The record didn't change until a few months ago when the litigation finally settled. Well, did it settle, all the litigation? So all of the cases, in our reply, we cited a couple of, we put an addendum that had some of them. This court can take judicial notice of the entries. All the US litigation has been voluntarily dismissed pursuant to stipulations. My assumption, I don't have a judicially noticeable way of finding Belize dockets, is the same as true in Belize. So yes, and at this point it would be very easy to send it back for just a hearing on the value of the collateral. The victims- The land now unencumbered? My understanding is that the victims have all, that there are two victim sets here. There's copper leaf, 8 million, there's the other 40. The other 40 pooled their interest into one entity, and they've received a portion, and copper leaf has received a portion. Into RIA, right? That's my understanding as to the 40, yes. And I don't know that the- But there's no evidence in the record to support your understanding, but you're telling us here for the first time. That I'm telling you what for the first time, Your Honor? That the litigation has settled and the land is no longer- I mean, the last case was dismissed March 23rd of this year. There's no judgment that I can file a 28 day letter with him. I'm telling you that here today as an update, but- You couldn't file the 28 day letter. Well, and if you'd like me to, I still can. But the issue here in this case is whether the court erred as a matter of law on October 5th, 2021 at sentencing. And the question is based as a matter of law on that day. Should the district court have reduced the loss amount by the value of collateral? If it were to go back- So, explain to me, why didn't your November 4th agreement waive that? So, as the September 21st, 21 letter indicates, that was only meant to resolve the outstanding issues that still remained after that hearing. That loss amount hearing on collateral was August 2020, and then what remained were the other objections to the PSR, which was the gross loss amount, which they agreed would be 20 levels based on 21.9 million, and the enhancements and subtractions. They added eight points for victims' means and role, and they took out three points for acceptance. That was what was adjudicated in the stipulation, the November 4th letter. There was nothing in there that indicates waiver, and certainly nothing that would indicate invited error. And my understanding is that the government uses the invited error or deliberate relinquishment language because that would get even past plain error. But there's nothing in here that says, as you might find in a plea agreement, that we waive the application of 3E2 issue. But it says you withdraw all prior applications to the PSR except the set forth below. And there's nothing that's set forth below that deals with the reduction in respect to the collateral. And I don't know that my client would agree that the quote all prior objections includes the 3E2 issue. But all is pretty capacious. All typically means all. And how is the last 22 million if that objection is maintained? The gross loss amount was 21.9, the gross loss amount. The idea is the application note should subtract from the gross loss amount the reasonable estimate of the fair market value of the collateral. But I mean, it says as an addition of 20 levels is warranted pursuant to the provision, because the loss caused by the defendant's conduct in the charge scheme was approximately 22 million. That's right, that was a- Does it say gross or before deductions? Yeah, I understand it. Trial counsel- Does it have a market value today, the property it believes? I have no idea what the current market value is, nor does the record have it, but the district court could very easily have a hearing. It wouldn't take long to determine, in her opinion, what a reasonable estimate of the market value is. But wouldn't that open up the, I mean, the government stuck to its agreement even though it later learned of additional- The 4.2 million extra? Yeah, I mean, that would come back anyway. Again, I think the tactical choice there was saying we stipulate the gross loss amount so that the Canada conduct doesn't come in. The representations trial counsel made to me was that that was what was going on there. The waiver argument came as a total surprise to trial counsel and to me, because no one thought, as I understood it, that there was any waiver. If you asked my client, he would say, of course there was no waiver. We decided the, we pitched the loss amount issue. The district court said no. She said reconsider it if the record changes or something to that effect. The record didn't change before sentencing. You went ahead and signed the November 4th letter and then you entered to a order of restitution where you were agreeing to, that the correct amount was 26 million. Correct, and again, that's based on the denial of the credit for collateral restitution as we say- I don't see anything in the order of restitution that refers to the denial of adoption. I agree, Your Honor. There's also nothing in there that says that the defendant affirmatively relinquishes his right to challenge the district court's otherwise final order denying the collateral exception. And so again, it came as a surprise to my client and the trial counsel that the government made this waiver argument. Because once the district court entered that final order, barring a motion to reconsider, we all assumed that was a final order that would be subject to review upon appeal. And so, it puts a high bar in a way for, what would be different? What would be different is the trial counsel could have said, subject to the previous decisions that were ruled unfavorably to us, we agree to the following. Nothing would have actually changed below, in terms of the district court's ruling. Even on the plain error standard, Your Honor, the case law is clear. Gall is clear that the district court had an obligation to calculate the guidelines range correctly first before varying or departing. The guidelines range would have been 10 to 16 months. Perhaps you could have ended up varying upwards to 84, but- As it is, the district court varied quite substantially down. Absolutely, right, from the 121 or 151 and up. Based on this, I mean, that's pretty clear on this. Based on this and other factors in that there actually was, this isn't your garden variety fraud scheme where there's nothing there. There actually was land there. There actually is improvement. It might not be, the government probably disagrees with the extent of value or appearance of it, but there's stuff there. So it's not your classic case where someone takes $25 million, drops it on a yacht, and walks away. Even the government only alleged 30% of the proceeds were diverted. I mean, honestly, the ordinary case developers make profits. They spend money on yachts, too. So the 30% number isn't on its own enough to say that the collateral should be worth zero or should be disregarded. The culpability of Mr. Borland here is surely less than that of one who takes $25 million, buys a yacht, or goes to Vegas. And that's the purpose of application 3E2. Note 3E2 is to reduce the guidelines range to reflect the diminished culpability of a defendant who actually has pledged collateral that's worth something to the victims or lenders of the case. Thank you, counsel. Thank you, your honors. We do have a minute on rebuttal, and we'll hear from the governor. Thank you. May it please the court. My name is Nagar Tekie, and I'm an assistant United States attorney in the Southern District of New York. I represent the United States on appeal, and I represented the United States in the proceedings below. I'd like to start with your honor's questions about whether the property in Belize is unencumbered. We certainly dispute that assertion, but that's outside of the record for the moment. The court- Well, everything about the settlement and what happened to the property is outside the record, isn't it? That's right, your honor. Certainly, the defense has pointed to citations to litigation in the United States where certain parties have entered into agreements. But we dispute the notion that the property that is currently in Belize is unencumbered or without dispute. We dispute the notion that that litigation has completed. So what is the line? I mean, counsel makes the argument that lots of properties have multiple mortgages. There's uncertainty as to total value at any point in which you're conducting a sentence on, I presume, on an anticipated value of collateral. So what's the line between this and what you would say would be an appropriate level of uncertainty? Sure, your honor. I think we'll go back to first principles. Here, one question that was in front of the district court was not about the value of the property, but first you have to decide whether the collateral was actually pledged for purposes of the guidelines. And the district court found that based on the evidence that it had before it at the August hearing, and then again, when she adopted the guidelines enhancements that the parties had stipulated to, that in fact the defendant had not pledged collateral pursuant to the applicable provisions in the guidelines. And when you look at cases like the cases we cited in our brief, Goss, Jimenez, Mayo, these are cases where before you even get to whether you need to value the property, you have to decide whether the property was actually pledged. And credit for pledged collateral requires an assessment of the likelihood of recovery. That's Goss. And it makes a difference if it was pledged to more than one person, doesn't it? That's exactly right, your honor. And in this case, the pledge itself was fraudulent. It was part and parcel of the fraud in multiple different ways. The defendant promised his investors that he would not encumber a particular piece of property. And examples of this are found in the PSR, paragraphs 40, 41, and 42. The PSR that the defendant agreed to and had no objections to at sentencing. Examples of this are, he would purport to pledge a single piece of property to multiple investors. Promising those investors that he had not previously encumbered that property, had not previously pledged that property, and then promising that he would not in the future pledge that property. So the pledge itself, which is something that gave the investors comfort in entering into the investments, was fraudulent. Was this the airport land that was pledged and re-pledged? There were multiple different pieces of property pledged, your honor. It was not, to my understanding, the airport land. There were sometimes particular parcels. And I'll add to that, in some cases, the particular parcels did not even exist in the form that the defendant had described them in. So not only had he pledged the same parcel of property, or purported to pledge a same parcel of property multiple times to multiple different investors, which was a misrepresentation. He misrepresented the nature of some of the properties that he pledged. Again, these are all in the facts of the defendant's- Let's go ahead, and your takeaway from what you've just told me is that this was not collateral, it couldn't be valued, or what? It's two-pronged, your honor. It was not collateral that was pledged for purposes of the credits against loss provision in the guidelines. And in addition, it was then collateral that could not be valued or was not valued based on the evidence in front of the court at the time she made her preliminary ruling. That she could not apply the credits against loss calculation. What's the relevance of the substitute asset provision as to the pledge predicate argument? That's question one, and then I'll ask you to go back to my original question. So assume I disagree with you on the pledge argument because the substitute asset provision. Then tell me how you draw the line as to levels of uncertainty. Sure, your honor, as to the substitute assets provision, Judge Fela found that you can't have some property, a malefactor, she used the word a malefactor, your malefactor can't just say that he or she has some property anywhere in the world, which is what the substitute assets provision that the defendant was relying on effectively said. And then get the benefit of that property anywhere in the world when it's time for sentencing as a credit against the loss when, and this is the secondary point, when the pledge itself to a particular piece of property. And the court didn't extend her reasoning this far, but we would submit when the particular pledge itself was to a particular piece of property. And that's what gave the investors the comfort. And I don't want to lose sight of the court's initial question, which was as to whether the court should have value- So assuming I think we get to the question of whether there's too much uncertainty as to the ownership and value of the collateral. I think your argument is, it therefore can't lead to a conclusion of subtraction under the guideline provision. But noted that counsel made the argument that lots of property has multiple encumbrances, and so there's always some level of uncertainty that we don't resolve, I think, typically before we subtract out collateral. So how do you draw the line between, there's lots of litigation and therefore uncertainty versus multiple mortgages on the same property? The court made a ruling based on the information she had before her at the time. And there were multiple aspects of the appraisals that Mr. Borland had submitted that we challenged on their face. One of them was the argument that there were multiple different, that the property did not seem to account for the different ways that it had been encumbered. But another argument that we would submit to this court is the fact that, and this was borne out later on during the actual sentencing proceeding. One of the victims provided a victim impact statement. And I raise this because, as the court has previously recognized today, Judge Fala left open, she specifically said, I will not foreclose this issue and your ability, Mr. Borland, to come back to me with additional facts and evidence. And so I'm incorporating some facts that were before the court at sentencing as well. One of the victims provided a statement at sentencing to the effect that he had purchased a piece of land that was adjacent to the land that Mr. Borland had purported to pledge that for several hundred thousand dollars, which was much lower than the many millions of dollars in value that Mr. Borland had represented to the court, the adjacent parcel of land was. And used in that example, the fact that the Belizean government itself had appraised the value of that parcel at only several hundred thousand dollars as opposed to the multiple millions of dollars that Mr. Borland was representing those properties to be valued at. And so that raises questions not just about how the property is encumbered, but whether the appraisals themselves that were before the court were true and proper appraisals. Are you suggesting then that after the November 4th letter and after the order of restitution, there were unresolved issues before Judge Fala with respect to valuation? No, your honor, I'm saying that, well, let me take that back a moment. Judge Fala, under the Mandatory Victim Restitution Act and the surrounding cases, as well as under the guidelines, was required to calculate the guidelines enhancements and also to calculate restitution, which was stipulated to by the parties at the time of sentencing. And so whether there were unresolved issues was not a factor that she was to consider when it came to sentencing. Both as to the guidelines enhancements, let me be clear, whether there were unresolved issues as to the specific values of various properties that Mr. Borland had reported to pledge was no longer before her at the time of sentencing. And that brings me back to an important point here. Your honors have already alluded to this, but what Mr. Borland did here is that he raised an issue before Judge Fala. He then argued that issue. And Judge Fala, at the end of a very long hearing and oral argument, having heard from both sides, provided her preliminary ruling on the issue. But specifically did not foreclose Mr. Borland's ability to come back to the court with additional facts and information that would inform her view at a later point. Both as to the guidelines and as a 3553A factor at sentencing. Mr. Borland then adjourned the sentencing multiple times from that hearing until the actual sentencing. In order to, and pointed to, the fact of the pending litigation, both in Belize and domestically. Until it came to the point, and your honors will recognize, that criminal cases cannot be put on standstill until domestic and foreign litigation sees its end so that a defendant can get the benefit of or the detriment of the results of that litigation. That would violate the government's rights. It would violate the victim's rights to see finality. And so, Mr. Borland had plenty of time to raise these issues. Instead, he entered into a negotiated resolution with the government.  Your honor, it was an agreement to the guidelines enhancement. It was our understanding that Mr. Borland was then withdrawing his argument as to the applicable guidelines enhancement. And he did it multiple times. He did it not only- So you're talking about this November 4th? Yes, your honor. He not only agreed to the loss amount in that stipulation, but he agreed to the application of the enhancement in that stipulation. It was in exchange for his agreements, both as to that and as to some of the factual issues that are reflected in that stipulation, that the government agreed to not pursue its theory that the Canadian scheme, which would have increased that guidelines enhancement, should increase that guidelines enhancement. And instead relied on the Canadian scheme as a factual matter with facts that were agreed to by both parties to argue the- It seems to me there's two possibilities, that he's either giving up the opportunity to, as you just said, it was going on as a delay to see if there was some resolution in the Belize litigation. He's giving up his opportunity to put on more facts in exchange for the agreement to the enhancement level and loss amount. But maintaining his argument that the record was sufficient at the time Judge Baila came to her preliminary conclusion. Or I'm giving up my opportunity to argue as to what the enhancement level should be and what the loss amount should be. I mean, those are two different things. And how do we know which, does it matter? I'll start with that, and how do we, if it does, how do we know which happened? This was a negotiated resolution, meaning that he received a benefit for the bargain, as did the government. When you say this, what are you talking about? The stipulation, your honor, the November stipulation. Okay. Which addressed not just the guidelines enhancements that the parties were going to agree on, but also several factual issues. And that's borne out by the paragraphs of the PSR that the parties agreed to amend. Had the government not received the benefit of an agreement on the loss enhancement. So you were doing fact bargaining? No, your honor. What we were doing, we believe that the court appropriately applied the guidelines and appropriately came to an understanding as to what the enhancements were. By November of 2020, Mr. Borland also agreed not to further the arguments that the government felt were incorrect, not legally sound, and not factually sound. In exchange for an agreement that we would not pursue a guidelines enhancement as to the Canadian scheme and rely on it as facts that the court could consider pursuant to 3553A factors. Again, which could have led to some additional fact finding in a FATICO hearing. And so- Any issues with respect to collateral credit? It is, your honor, and we believe that the party's actions after that point reinforced that, including in the defendant's sentencing submissions where he repeatedly said that they adopted and had no objections to the enhancements that were applied in the PSR. And recited to the party's stipulations as to the loss enhancement and the loss amount, as well as the other- Which in the November letter, the government thinks resolved the collateral issues. And, your honor, I'll point you to the stipulation said that the party- We're at 280, right? Yes, your honor. The first paragraph, the first substantive paragraph. The stipulation was that an addition of 20 levels is warranted because the loss caused by the defendant's conduct in the charge scheme was approximately $22 million. And so the stipulation was not just to the loss caused by the defendant's scheme, but also as to the application of the enhancement. I see my time is- Wait, I'm sorry. I don't see how this, it's been a long morning. But I don't see how the language you just read me wraps up the collateral issue. Sure, your honor. The defendant's argument, initial argument, before he entered into the stipulation was that the loss amount was zero. He had argued multiple times to Judge Vela that the loss amount and loss enhancement should be zero. Because of the collateral. Because of the collateral. And so when he entered into this stipulation, he now, he then changed- He's now saying, according to you, that a 20 level enhancement is warranted because the loss exceeded $22 million. He agreed to that, your honor. And you're saying that this agreement was, in effect, giving up his collateral credit claim. Right, because otherwise, if he had maintained his, yes. Otherwise, if he had maintained his collateral credit claim, the loss amount would be zero. My time is over. And so therefore, the positions are inconsistent. They're logically, factually inconsistent. And that, you say, so it doesn't work. Of course, the laws doesn't need to maintain his objection, but he can withdraw his objection. And you read the fundamental incompatibility of this position with the prior position as effectively a withdrawal. Yes, your honor. Okay. Unless the court has any questions. The judgment of the district court should be affirmed. Thank you. Your honors, on page 8281, where Judge Parker was asking about all prior objections. I would note the header there, says the defendant's prior objections. Wait, wait, I'm sorry, where are you? Appendix 8281, middle of the page. The header underlines, says the defendant's prior objections to factual assertions. So earlier when I said, I queried whether all prior objections would include the application of credit. I would argue that's a legal objection, not a factual objection. Everything in that part on- Wait, the loss- It's a factual objection, and the amount of money is not $22 million, it's zero. That would be different. If the judge had said, my reasonable estimate, I find the collateral exception applies. If my reasonable estimate of the value of the collateral is five cents, then we'd have a factual question as to the loss amount. She said, I don't think the exception can apply in the first place. That's a legal objection. That's a legal objection, your honor. Whether the collateral exception applies in the first place. That's why we argue as a matter of law, the judge- But I thought the prior discussions and the prior arguments were about issues concerning the process of and the problems associated with valuing this. And that's, our position is that because the district court took those factual issues to foreclose at all, as a matter of law, any applicability of the application- Is that what she said, or did, I read the record, and correct me if I'm wrong, that she was adverting to the difficulties of making those kinds of determinations given the state of the record before her when she was asked to do so. She said there were too many contingencies. That's right. Right, too many, and then she said, I find that it doesn't apply at all. And my friend referred to this as a preliminary ruling, but the docket sheet is quite clear that the application was denied. Not that she found the value was zero, not that we can come back later and with more facts to change what the value was. She said it was denied on the record before her, and the record- She said, or something other than the facts that I have right now. Right, and those facts that she had right now were the same facts that we would have had on October 5th, 2021 in sentencing. Those facts were sufficient, in our opinion, for the court to find that the collateral exception applied, and then to make a reasonable estimate. In the same way, for example, I don't want to belabor this point, but judges make reasonable estimates of attorney's fees based on thin facts, right? They have to estimate a load star and figure out how many hours might be reasonable. The judge could have looked at this and said, well, a reasonable person might pay $20 to have the subrogation rights to your collateral. But if I look at, to use your example, as a district court judge, I say, these billing records are such a mess and I can't read them, and so therefore, I can't come to a conclusion, that's a factual determination. Isn't that would be a clear error? Right, but that would be different if you said, you're entitled to attorney's fees, but based on the record before me, I can't find a dollar amount there. That would be different. That's not what she did here. She said, I don't think it applies. She said, essentially, there were too many contingencies for it to count as collateral. And that's the government's position as well. Yeah, but you've been going here to withdraw all objections. All factual objections. You're putting a lot of weight on the header. I am. The defendant withdraws all prior objections. Again, Your Honor, my client did not at any point intentionally relinquish his right to appeal the final order. And I think the consequences of a ruling that affirmed would be that any time a defendant raises a challenge to a, let's say, a sentencing guidelines factor that's relevant to sentencing, and then later on wants to resolve with the government the other outstanding issues, outstanding is the language used on 284, that that would, unless they're very careful, go back and waive a challenge to an otherwise final order. I don't think that's- Well, he doesn't waive it by inaction, it's your honor. Well, and I think the case law that the government cited requires affirmative action. I think that what we're talking about now is whether this all prior objections language is enough. But that's fairly thin in my opinion to say the defendant intentionally, deliberately relinquished his right to challenge an otherwise final order. Do you agree as a statement of law if this is, if you can look at what the position of the defendant was and if it is fundamentally inconsistent with the prior position? I don't know that it's fundamentally inconsistent because this gets to whether the enhancement is referring to gross loss amount or no loss amount after subtracting out the credit. I look at the language that my friend cited and say, well, I mean, what trial counsel told me, which I believe, is that they had to agree to the gross loss amount. You've got the fraud loss ladder. They said, okay, we're going to agree that it's 21.9 so that we don't have to worry about the Canadian conduct bringing it above the 25.5. It also, I mean, I'm not sure I see that ambiguity given that it's the loss amount. And the enhancement level. You don't get to the enhancement level with that loss amount unless you've finished your subtractions for the collateral. That's right, but once the court had already ruled on the issue, trial counsel saw no reason to move for reconsideration of that issue. It was final. In your position, that's a legal issue, not a factual issue. That's correct, Your Honor. All right, thank you. If it's a factual issue, you wait. I can't say that we, if it's mere waiver, this is still subject only to plain error review, and I think that this is plain error. The government's arguing more than plain error. They're arguing invited error, something that would get past that. I don't think this is enough for that, even if it's a factual issue. Thank you both. Very well argued and brief, thank you, counsel. The matter is under